

FILED
CLERK, U.S. DISTRICT COURT

MAY  6 2014

CENTRAL DISTRICT OF CALIFORNIA
BY_____DEPUTY

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARIA E. HERNANDEZ,              ) Case No. CV 13-2525-JPR
                                 )
            Plaintiff,           )
                                 )
       vs.                       ) MEMORANDUM OPINION AND ORDER
                                 ) REVERSING COMMISSIONER AND
                                 ) REMANDING FOR FURTHER
CAROLYN W. COLVIN, Acting        ) PROCEEDINGS
Commissioner of Social           )
Security,                        )
                                 )
            Defendant.           )
_____)

I.    PROCEEDINGS

     Plaintiff seeks review of the Commissioner's final decision

denying her applications for disability insurance benefits

("DIB") and supplemental security income ("SSI").  The parties

consented to the jurisdiction of the undersigned U.S. Magistrate

Judge under 28 U.S.C. § 636(c).  This matter is before the Court

on the parties' Joint Stipulation, filed January 31, 2014, which

the Court has taken under submission without oral argument.  For

the reasons stated below, the Commissioner's decision is reversed

and this matter is remanded for further proceedings.

1

## II.   BACKGROUND

Plaintiff was born on November 21, 1953.  (Administrative Record ("AR") 46, 155.)  She completed sixth grade in Guatemala before moving to the United States in 1977.  (AR 47.)  She worked as a self-employed hot-dog vendor and as a combined trimmer and ironer in the garment industry.  (See AR 50-53, 188.)

On December 14, 2009, Plaintiff filed applications for DIB and SSI.  (See AR 155-58.)  She alleged that she had been unable to work since October 27, 2006, because of osteoporosis, arthritis, diabetes, and problems with her left knee.  (See AR 182, 186.)  After her applications were denied initially and upon reconsideration, she requested a hearing before an ALJ.  (AR 108-10.)  A hearing was held on June 7, 2011, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert ("VE").  (AR 42-77.)  In a written decision issued September 21, 2011, the ALJ determined that Plaintiff was not disabled.  (AR 38.)  On December 22, 2012, the Appeals Council denied her request for review.  (AR 4-10.)  This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Id.; Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a

1  conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue,
2  504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla
3  but less than a preponderance.  Lingenfelter, 504 F.3d at 1035
4  (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.
5  2006)).  To determine whether substantial evidence supports a
6  finding, the reviewing court "must review the administrative
7  record as a whole, weighing both the evidence that supports and
8  the evidence that detracts from the Commissioner's conclusion."
9  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  "If the
10  evidence can reasonably support either affirming or reversing,"
11  the reviewing court "may not substitute its judgment" for that of
12  the Commissioner.  Id. at 720-21.

13  **IV.  THE EVALUATION OF DISABILITY**

14  People are "disabled" for purposes of receiving Social
15  Security benefits if they are unable to engage in any substantial
16  gainful activity owing to a physical or mental impairment that is
17  expected to result in death or which has lasted, or is expected
18  to last, for a continuous period of at least 12 months.  42
19  U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257
20  (9th Cir. 1992).

21  A.  The Five-Step Evaluation Process

22  The ALJ follows a five-step sequential evaluation process in
23  assessing whether a claimant is disabled.  20 C.F.R.
24  §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821,
25  828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first
26  step, the Commissioner must determine whether the claimant is
27  currently engaged in substantial gainful activity; if so, the
28  claimant is not disabled and the claim must be denied.

3

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, the claimant is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant has the burden of proving she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that

---

[1]    RFC is what a claimant can do despite existing exertional and nonexertional limitations.  §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1   the claimant is not disabled because she can perform other

2   substantial gainful work available in the national economy.

3   §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  That determination

4   comprises the fifth and final step in the sequential analysis.

5   §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966

6   F.2d at 1257.

7        B.   The ALJ's Application of the Five-Step Process

8        At step one, the ALJ found that Plaintiff had not engaged in

9   any substantial gainful activity since the alleged onset date,

10  October 27, 2006.  (AR 32.)  At step two, he concluded that

11  Plaintiff had severe impairments of left-knee internal

12  derangement, status post-arthroscopic synovectomy, chondroplasty

13  of the medial femoral condyle and patellofemoral joint to remove

14  a loose body, and partial meniscectomy;[2] osteoporosis; and

15  obesity.  (AR 32-33.)  Plaintiff's noninsulin-dependent diabetes

16  was not severe, however.  (AR 33.)  At step three, the ALJ

17  determined that Plaintiff's impairments did not meet or equal a

18  Listing.  (Id.)

19       At step four, the ALJ determined that Plaintiff retained the

20

21

22

_____

23       [2]   Arthroscopic knee surgery is performed by inserting a
     small camera and surgical tools through small cuts in the knee.
24   See Knee Arthroscopy, MedlinePlus, http://www.nlm.nih.gov/
     medlineplus/ency/article/002972.htm (last updated Jan. 17, 2013).
25   Synovectomy is excision of all or part of the synovium, a
     membrane that lines the knee joint.  See Stedman's Medical
26   Dictionary 1773 (27th ed. 2000).  Chondroplasty is reparative or
     plastic surgery upon cartilage.  See id. at 342.  Partial
27   meniscectomy is removal of part of the meniscus, a
     fibrocartilaginous structure in the knee.  See id. at 1091.
28

RFC to perform "medium work,"[3] with some additional limitations. Specifically, the ALJ found that

> she can exert 20 to 50 pounds of force occasionally and/or 10 to 20 pounds of force frequently and/or greater than negligible up to 10 pounds of force constantly to move objects. The claimant can stand and walk up to 6 hours and sit up to 6 hours in an 8-hour workday with normal breaks, provided that walking does not exceed one hour at a time. After one hour of walking, the claimant would have an opportunity to sit for at least 10 minutes, during which she can remain on task, before resuming walking. In addition, her work would require no more than occasional climbing [of] ladders, ropes[,] scaffolds, ramps or stairs; and kneeling, crouching or crawling.

(AR 33-34.)  Based upon the VE's testimony, the ALJ determined that Plaintiff could still perform her past relevant work as a vendor and as a trimmer and ironer.  (AR 37.)  He therefore found that she was not disabled.  (AR 38.)

**V.    DISCUSSION**

Plaintiff contends that the ALJ erred in considering the opinion of her treating physician, evaluating the demands of her past relevant work, and assessing her credibility.  (J. Stip. at 4.)

---

[3]    "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  §§ 404.1567(c), 416.967(c).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A.   The ALJ Erred in Finding That Plaintiff Could Perform
     Her Past Relevant Work

Plaintiff contends that the ALJ erred in finding she could perform her past work as a vendor (DOT 291.457-022, 1991 WL 672563) and as an ironer (DOT 363.684-018, 1991 WL 673018) and trimmer (DOT 789.687-070, 1991 WL 681267).  (J. Stip. at 6-7.)

1.   Applicable law

At step four, the claimant has the burden of showing that she can no longer perform her past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citing §§ 404.1520(e), 416.920(e)).  She "has the burden of proving an inability to return to [her] former type of work and not just to [her] former job."  Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986).

Although the burden lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion.  Pinto, 249 F.3d at 844 (citing SSR 82-62, 1982 WL 31386 (Jan. 1, 1982)).  "This is done by looking at the residual functional capacity and the physical and mental demands of the claimant's past relevant work."  Id. at 844-45 (internal quotation marks omitted); see also §§ 404.1520(f), 416.920(f).  If the ALJ properly determines that the claimant can perform either the actual functional demands and job duties of a particular past relevant job or the job as generally performed in the national economy, the claimant is not disabled.  Pinto, 249 F.3d at 845; §§ 404.1520(f), 416.920(f).

7

## 2.   Relevant background

Plaintiff testified that she worked as a combined trimmer and ironer of finished clothing.  (AR 50-52.)  She said the position required her to stand throughout the workday other than during her 30-minute lunch and state-law-mandated 10-minute breaks.  (AR 63.)

Thereafter, Plaintiff was self-employed for two years as a hot-dog vendor using a cart she owned.  (AR 52, 64.)  She said she could no longer work as a vendor because it required seven hours of standing.  (AR 65.)  Plaintiff testified that she purchased the food products and loaded them into the cart, which was attached to the back of a car.  (AR 65-66.)  She said her son would drive the cart to a vending site, where she would remain for two hours before moving to the next site.  (AR 67.) Plaintiff testified that she was unable to sit while vending because she would be ticketed if she did, apparently for blocking the sidewalk.  (AR 65, 67-68.)

The VE testified that Plaintiff worked as a vendor, a position the DOT classifies as medium, unskilled work requiring one month or less of training.  (AR 70 (citing DOT 291.457-022, 1991 WL 672563).)  Plaintiff worked as a trimmer, which the DOT describes as light, semiskilled work requiring from one to three months of training.  (Id. (citing DOT 789.687-070, 1991 WL 681267).)  In that capacity, Plaintiff also worked as an ironer, a position the DOT describes as light, unskilled work requiring up to one month of training.  (Id. (citing DOT 363.684-018, 1991 WL 673018).)  The VE testified that Plaintiff performed those positions as described in the DOT.  (Id.)

1      The ALJ presented the VE with two hypotheticals concerning
2  an individual of Plaintiff's age, education, work experience, and
3  skill set.  In the first, the individual was capable of "medium"
4  work and could stand or walk six hours in an eight-hour day but
5  could walk no more than 60 minutes at a time, after which she
6  required at least 10 minutes of sitting.  (AR 72.)  The VE
7  testified that such a person could perform Plaintiff's past
8  relevant work both as actually and generally performed.  (Id.)
9  In the second hypothetical, the individual had the same abilities
10  and limitations as in the first except that she was capable of
11  only "light" work.  (Id.)  The VE testified that such a person
12  could not work as a vendor but could work as an ironer or
13  trimmer.  (AR 73.)

      Plaintiff's counsel then examined the VE.

> Counsel:  [Plaintiff] seemed to described [sic] a job
> where she was constantly standing eight hours out of the
> day, no sitting except for her 10 minute – for break, or
> two breaks and her lunch.  Is that how these jobs all
> right [sic] typically performed?
>
> VE:  Yes.
>
> Counsel:  .  .  .  So if a person couldn't do,  stand
> constantly throughout an eight hour day absent her breaks
> they would  [not][36]  be able to  perform these  jobs  as
> they're typically performed in your experience?
>
> VE:  Correct.

(AR 73.)

---

[36]      The parties stipulated to this correction of the
transcript.  (See J. Stip. at 7 n.1.)

1    In response to questioning by the ALJ, the VE stated that

2 her testimony did not diverge from or conflict with the DOT.   (AR

3 74.)

4        3.   Analysis

5    The ALJ found that Plaintiff could stand for six hours in an

6 eight-hour day.   (AR 33-34.)   Based on the RFC and the VE's

7 testimony, he also found that she could perform her past work as

8 a vendor and as an ironer and trimmer as those jobs were actually

9 and generally performed.   (AR 37.)   Plaintiff contends that the

10 VE testified that those jobs required "constant standing outside

11 of state law mandated breaks and meals" and that Plaintiff

12 therefore could not perform them.   (J. Stip. at 6-7 (citing AR

13 73.))

14    The VE presented conflicting testimony.   She first stated

15 that an individual capable of only six hours of standing could

16 perform Plaintiff's past relevant work; she then conceded that

17 those positions as both actually and typically performed required

18 standing throughout an eight-hour day except for the 50 minutes

19 allotted for lunch and breaks.   Neither the VE nor the ALJ

20 resolved the conflict.

21    The Commissioner contends that the VE's responses to

22 Plaintiff's counsel were consistent with her earlier testimony

23 concerning the ALJ's hypotheticals.   Specifically, the

24 Commissioner notes that Plaintiff's counsel referred to

25 "constant" standing and emphasizes that the Social Security

26 Administration and the DOT define a "constant" activity as one

27 occurring two-thirds or more of the time.   (J. Stip. at 8-9

28 (citing Program Operations Manual System (POMS) DI

10

25001.001(B)(12)).)   The Commissioner argues that the VE's later testimony should be interpreted in light of that definition, which would accommodate a six-hour standing limit.  (Id. at 9.) This argument is unavailing.

First, it is clear from counsel's questioning that he did not intend the DOT definition of "constant" standing.  He described "constantly standing eight hours out of the day" with "no sitting except for . . . two breaks and her lunch," a description that clearly indicates continuous standing.  Second, the DOT definition of "constant" standing indicates standing at least two-thirds of the time.  Thus, an employee could expect to stand, at a minimum, five hours and 20 minutes in an eight-hour day, but possibly more.  Plaintiff's six-hour limit on standing would likely preclude many jobs with such demands.  The VE's interpretation of "constant" therefore does not alter the inconsistency between her initial testimony in response to the ALJ and her later testimony upon examination by Plaintiff's counsel.

Because the VE's testimony is self-contradictory and the contradiction was not resolved, the ALJ could not rely on that testimony in finding that Plaintiff could perform her past relevant work.  "Substantial evidence does not support a finding of disability where the VE's testimony either is contradictory or responds to an inaccurate hypothetical."  Hamilton v. Comm'r of Soc. Sec. Admin., 464 F. App'x 681, 682 (9th Cir. 2012) (remanding when light-work positions described by VE could not accommodate claimant's at-will sit/stand limitation "according to the VE's own testimony"); see also Williams v. Soc. Sec. Admin.,

357 F. App'x 741, 742 (9th Cir. 2009) (remanding in part because VE gave conflicting testimony as to whether physician's report required finding of disability at step five).

Remand is warranted on this issue. Because the ALJ will necessarily reassess Plaintiff's credibility after clarifying the VE's testimony, the Court does not reach the issue raised in the Joint Stipulation concerning Plaintiff's credibility. The issue concerning the ALJ's rejection of the opinion of Plaintiff's treating physician assistant, Leilani Mookini, is an issue of law independent from the VE's testimony, however, and therefore the Court proceeds to consider it.

B.    The ALJ Did Not Err in According Little Weight to the
      Assessment of Physician Assistant Leilani Mookini

Plaintiff contends that the ALJ erred in treating the Physical Residual Functional Capacity Questionnaire completed and signed by Leilani Mookini, physician assistant, as though it did not reflect the opinion of an acceptable medical source.  (J. Stip. at 13-15); see §§ 404.1513, 416.913.  Plaintiff contends that Mookini was supervised in her treatment of Plaintiff by Dr. Jose L. Perez and that the questionnaire reflects Dr. Perez's opinion as Plaintiff's treating physician.  (J. Stip. at 13-15.)

1.    Applicable law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not directly treat or examine the plaintiff.  Lester, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than that of an examining physician, and

1  an examining physician's opinion is generally entitled to more
2  weight than that of a nonexamining physician.  Id.

3      This is true because treating physicians are employed to
4  cure and have a greater opportunity to know and observe the
5  claimant.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).
6  If a treating physician's opinion is well supported by medically
7  acceptable clinical and laboratory diagnostic techniques and is
8  not inconsistent with the other substantial evidence in the
9  record, it should be given controlling weight.
10  §§ 404.1527(c)(2), 416.927(c)(2).

11      In order to reject the testimony of a medically acceptable
12  treating source, the ALJ must provide specific, legitimate
13  reasons based on substantial evidence in the record.  Molina v.
14  Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  The ALJ need not,
15  however, accept the opinion of any physician, including a
16  treating physician, "if that opinion is brief, conclusory, and
17  inadequately supported by clinical findings."  Thomas, 278 F.3d
18  at 957; accord Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d
19  1190, 1195 (9th Cir. 2004); see also Crane v. Shalala, 76 F.3d
20  251, 253 (9th Cir. 1996) (ALJ permissibly rejected psychological
21  evaluations "because they were check-off reports that did not
22  contain any explanation of the bases of their conclusions"); De
23  Guzman v. Astrue, 343 F. App'x 201, 209 (9th Cir. 2009) (ALJ was
24  "free to reject" doctor's check-off report that did not explain
25  basis for conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th
26  Cir. 1983) (expressing preference for individualized medical
27  opinions over check-off reports).  Moreover, an ALJ may accord
28  opinions from "other sources," such as physician assistants, less

13

1  weight, Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996),

2  superseded by regulation on other grounds as noted in Hudson v.

3  Astrue, No. CV-11-0025-CI, 2012 WL 5328786, at *4 n.4 (E.D. Wash.

4  Oct. 29, 2012), and may discount their testimony by giving

5  "reasons germane to each witness for doing so."   Molina, 674 F.3d

6  at 1111 (internal quotation marks omitted).

7          2.   Relevant background

8      On March 30, 2011, Mookini completed on Plaintiff's behalf a

9  Medical Statement Regarding Knee Problem for Social Security

10  Disability Claim (AR 374-75), Physical Residual Functional

11  Capacity Questionnaire (AR 376-79), and Diabetes Mellitus

12  Residual Functional Capacity Questionnaire (AR 380-83).

13  Plaintiff challenges the ALJ's treatment of the second of these,

14  the RFC Questionnaire.   (See J. Stip. at 13-14.)

15      In the RFC Questionnaire, Mookini reported that she had seen

16  Plaintiff every one to six months since January 2005.   (AR 376.)

17  Mookini indicated diagnoses of diabetes, left-knee

18  osteoarthritis, and osteoporosis and assessed Plaintiff's

19  prognosis as "fair."   (Id.)   Mookini noted that Plaintiff

20  suffered from "intermittent" neck, low-back, shoulder, left-knee,

21  upper-extremity, and lower-extremity pain.   (Id.)   Mookini

22  indicated clinical findings of "A1C = 8.7, paraspinal tenderness,

23  extremities: decreased ROM."[37]   (Id.)   She noted that Plaintiff's

24

25      [37]   The A1C blood test provides information about a
26  person's blood-glucose levels over the preceding three months.
   See The A1C Test and Diabetes, Nat'l Diabetes Information
27  Clearinghouse, http://diabetes.niddk.nih.gov/dm/pubs/A1CTest/#1
   (last updated Apr. 2, 2014).   An A1C level above 6.5 percent
28  indicates diabetes.   Id.

treatment included oral nonsteroidal antiinflammatories, physical therapy, and oral hypoglycemics.  (Id.)

Mookini opined that Plaintiff's symptoms were occasionally severe enough to interfere with work performance and that she was capable of only low-stress work because of her diabetes and "recurrent flares of extremity pain." (AR 377.)  Mookini opined that Plaintiff could not sit, stand, or walk for more than one hour at a time and could do those things for a combined total of less than two hours in eight. (AR 377-78.)  Mookini noted that Plaintiff would require an unspecified number of unscheduled breaks throughout the day.  (AR 378.)

Mookini opined that Plaintiff could rarely lift less than 10 pounds and never more, could rarely twist, stoop, bend, or climb stairs, and could never crouch or climb ladders.  (Id.)  Mookini opined that Plaintiff would have good days and bad days and would likely miss more than four days a month of work.  (AR 379.)  She signed the form "L. Mookini, PAC/PEREZ." (Id.)

    3.   <u>Analysis</u>

The ALJ accorded "very little weight" to the RFC Questionnaire, in part because he found that Mookini was not an "acceptable medical source." (See AR 35-36); §§ 404.1502, 416.902, 404.1513(a), 416.913(a).  Plaintiff asserts that Mookini's opinion as expressed in the RFC Questionnaire should have been accorded the same weight as that of a treating physician because "Dr. [Jose] Perez supervised treatment provided directly by Ms. Mookini." (J. Stip. at 13.)  Plaintiff cites <u>Gomez</u> and <u>Taylor v. Comm'r of Soc. Sec. Admin.</u>, 659 F.3d 1228, 1234 (9th Cir. 2011), for the proposition that Mookini's

1   assessment should be attributed to Dr. Perez.

2       In each of those cases, the court treated a nurse

3   practitioner's opinion as that of an "acceptable medical source"

4   because she was working closely with and under the supervision of

5   a physician.  See Gomez, 74 F.3d at 971 (holding nurse

6   practitioner's opinion properly considered "as part of the

7   opinion of [the plaintiff's treating physician]" because she

8   "worked closely under [his] supervision" and "was acting as [his]

9   agent"); Taylor, 659 F.3d at 1234 ("To the extent nurse

10  practitioner Wrona-Sexton was working closely with, and under the

11  supervision of, Dr. Thompson, her opinion is to be considered

12  that of an 'acceptable medical source.'").  Gomez relied on a

13  subsection of §§ 404.1513 and 416.913 that has since been deleted

14  by amendment, see Medical and Other Evidence of Your

15  Impairment(s) and Definition of Medical Consultant, 65 Fed. Reg.

16  34,950, 34,952 (June 1, 2000), and the Ninth Circuit has

17  questioned the "continued vitality" of Gomez in the wake of that

18  amendment, see Molina, 674 F.3d at 1111 n.3.

19      In any event, contrary to Plaintiff's assertion, the record

20  does not reflect that Mookini was closely supervised by Dr. Perez

21  in her treatment of Plaintiff.  Records of Plaintiff's visits

22  with Mookini contain no evidence of Dr. Perez's involvement.

23  (See, e.g., AR 222, 224, 225, 226, 227.)  That his name is

24  preprinted on cited forms does not demonstrate that Dr. Perez

25  himself ordered various diagnostic tests.  (See, e.g., AR 245,

26  249, 250, 253, 255, 264, 270, 274, 276.)  Indeed, although

27  Plaintiff contends that Dr. Perez prescribed medication to her,

28  the pages of the record she cites reveal that other practitioners

16

1    authorized the prescriptions using a preprinted form with Dr.

2    Perez's name.[38]   (See AR 298, 303.)   Further, the letter cited by

3    Plaintiff as evidence that "Dr. Perez and Ms. Mookini jointly

4    summarized the course of physical therapy" (J. Stip. at 13)

5    nowhere bears Dr. Perez's name.   Rather, it is drafted for

6    Mookini's signature – notably, as physician assistant to a

7    different doctor in the practice – and represents that "I have

8    been treating patient since 2009."[39]   (AR 370.)   No evidence

9    supports Plaintiff's contention that "Dr. Perez also signed off

10   on the residual functional capacity assessment."   (J. Stip. at 13

11   (citing AR 376-79).)

12        Nor does the state-law requirement that physician assistants

13   be supervised by physicians alter the analysis, as Plaintiff

14   contends.   (See J. Stip. at 14); Cal. Code Regs. tit. 16,

15   § 1399.545.   Section 1399.545 mandates only that during

16   Plaintiff's actual visits with Mookini, a physician be accessible

17   for consultation, at least electronically.   § 1399.545(a).   The

18   regulation otherwise requires that the physician delegate only

19   tasks within his specialty or consistent with usual treatment

20   practice and that the physician and physician assistant

21   themselves establish procedures to ensure the latter's adequate

22   supervision.   See § 1399.545(b)-(e).   None of this, nor the fact

23

24        [38]   In fact, Plaintiff appears to have been seen at the
25   clinic by a few physician assistants (see, e.g., AR 290-96, 302-
26   04, 231, 233-34, 236-37) and at least one doctor (see, e.g., AR
     223), but it is not clear from the record that she was ever seen
27   by Dr. Perez.

28        [39]   This appears to contradict her statement on the RFC
     Questionnaire that she had been seeing Plaintiff since 2005.

that the physician "shall be responsible for all medical services provided by a physician assistant under his or her supervision," § 1399.545(f), amounts to the level of close supervision required to establish that Mookini's opinion about Plaintiff's health is the same as that of Dr. Perez. See Molina, 674 F.3d at 1111 (finding that physician assistant "did not qualify as a medically acceptable treating source" when "the record does not show that she worked under a physician's close supervision"); Lowery v. Astrue, No. ED CV 11-1479-SH, 2012 WL 1968605, at *1-2 (C.D. Cal. June 1, 2012) (noting that physician assistant not "acceptable medical source" and therefore ALJ did not need to give specific and legitimate reason for rejecting opinion).

Mookini's opinion therefore was not entitled to special weight because she was merely an "other source." See 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (medical sources such as physician assistants who do not qualify as acceptable medical sources are other sources); see also Gomez, 74 F.3d at 970-71 (ALJ may accord opinions of other sources less weight than those of acceptable medical sources). Even if Mookini had qualified as an acceptable medical source, however, remand would not be warranted because the ALJ gave specific and legitimate reasons for discounting her opinion. Molina, 674 F.3d at 1111.

The ALJ noted that Mookini's assessments were brief and conclusory, consisting merely of checkmarks and brief responses, with no clinical or diagnostic evidence noted to support her findings. (See AR 33, 35-36.) Indeed, although Mookini opined in the RFC Questionnaire that Plaintiff could sit or stand for only an hour at a time and two hours daily, could lift less than

18

10 pounds only rarely, and would miss more than four days of work a month (AR 377), she nowhere indicated a basis for such significant restrictions.  The only clinical findings Mookini noted were an A1C test positive for diabetes, paraspinal tenderness, and decreased range of motion in Plaintiff's extremities.  (AR 376.)  Such vague findings hardly support Mookini's opinion that Plaintiff suffered from disabling impairments.  Moreover, Mookini reported that Plaintiff suffered only "intermittent" pain and achieved "intermittent" relief using such conservative treatments as antiinflammatories and physical therapy, both of which findings are inconsistent with the restrictive RFC Mookini suggested.  (Id.)  The ALJ was thus entitled to accord "very little weight" to Mookini's RFC Questionnaire because it was a mere check-off report, was internally inconsistent, and did not explain the bases for her conclusions.  See Crane, 76 F.3d at 253 (finding ALJ permissibly rejected physician evaluations because they were check-off reports with no explanation for their conclusions); Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (finding "inconsistencies and ambiguities" in doctor's opinion were specific and legitimate reasons for rejecting it); see also Molina, 674 F.3d at 1111 (ALJ may reject check-off reports that do not contain explanation of basis for conclusions).

The ALJ further noted that Mookini's opinion that Plaintiff's RFC would not permit even light work was inconsistent with the other medical evidence.  (AR 36.)  The record reflected that Plaintiff "tolerated well" an October 2007 surgery on her left knee.  (Id. (citing AR 217).)  Records from Dr. Jay

19

Jazayeri, Plaintiff's treating physician and surgeon, showed that despite some tenderness and mild swelling (see AR 310-11), her left knee was improved (see, e.g., AR 307 (July 8, 2008 record noting "improved condition" of left knee despite "mild swelling"); id. (Oct. 5, 2009 record noting that "knee is doing well" although Plaintiff "gets pain after activity"); id. (Dec. 4, 2009 record noting knee pain controlled with antiinflammatory medication); AR 312 (Jan. 21, 2008 record noting "no tenderness" and "satisfactory range of motion" in left knee and advising downgrade from large to small knee brace and exercise)).  A July 10, 2009 MRI of Plaintiff's left knee was normal.  (AR 248.) Moreover, although Plaintiff notes that she developed right-knee pain (see J. Stip. at 24), the record similarly showed improvement of her right knee with her use of antiinflammatory medication and a left-knee brace (see AR 339-40), the latter presumably permitting more even weight distribution between her knees.

Plaintiff's treatment at Central City Community Health Center, including by Mookini, reflected only occasional references to knee pain, full range of motion in both knees, and no specialized treatment.  (See AR 35 (citing AR 341-73 (medical records from mid-2009 to early 2011)), 368; see also AR 222-30 (records from 2008 and 2009 with no mention of knee issues).) The ALJ noted that the record contained only "scattered sporadic references" to treatment for osteoporosis (AR 35), which included indications that Plaintiff's osteoporosis responded to conservative treatment with medication (id.; see AR 307).

Examining internist Aida Cruz[40] reported that Plaintiff exhibited full range of joint motion without pain except for in her left knee, which was tender and had crepitus.[41] (AR 327.) Plaintiff's motor and sensory function in her upper and lower extremities was intact, and although she limped "slight[ly]" with her left foot, she needed no assistive device to walk. (AR 326-27.) Contemporaneous left-knee x-rays showed "early" "degeneration" of the medial compartment and "mild spur formation" in the intercondylar notch but "[n]o appreciable degeneration" in the patellofemoral and lateral compartments. (AR 330.) Orthopedic surgeon Dr. Timothy Ross, who reviewed the x-rays, reported "no obvious posttraumatic finding." (Id.) Based on her examination of Plaintiff and left-knee x-rays, Dr. Cruz opined that she was capable of "medium" work but must avoid frequent kneeling, jumping, and prolonged ambulation. (AR 328.)

The ALJ thus reasonably accorded Mookini's very restrictive

---

[40] The ALJ incorrectly identified the examining physician, confusing her with the physician who reviewed Plaintiff's contemporaneous radiology report. (AR 36-67; see AR 328, 330.) Because the ALJ properly summarized Dr. Cruz's report, his clerical error was harmless. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (finding error harmless when "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion"); cf. Wright v. Comm'r of Soc. Sec., 386 F. App'x 105, 109 (3d Cir. 2010) (Tashima, J., sitting by designation) (ALJ's misstatements in written decision harmless error when regardless of them "ALJ gave an adequate explanation supported by substantial evidence in the record"); Castel v. Comm'r of Soc. Sec., 355 F. App'x 260, 265-66 (11th Cir. 2009) (ALJ's erroneous reference to wrong medical reports harmless when he referred to reports "in two sentences" but "dedicate[d] two paragraphs" to correct reports, and decision conformed to medical evidence).

[41] Crepitus is grating of a joint, often in association with osteoarthritis. See Stedman's, supra, at 424.

21

RFC little weight given its inconsistency with the record, including her own treatment of Plaintiff. See §§ 404.1527(c)(4), 416.927(c)(4) (explaining that more weight should be afforded to medical opinions that are consistent with the record as a whole); Batson, 359 F.3d at 1195 (holding that "ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings" (citation omitted)); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting opinion); Houghton v. Comm'r Soc. Sec. Admin., 493 F. App'x 843, 845 (9th Cir. 2012) (holding that ALJ's finding that doctors' opinions were "internally inconsistent, unsupported by their own treatment records or clinical findings, [and] inconsistent with the record as a whole" constituted specific and legitimate bases for discounting them).

Remand is not warranted on this basis.

C. Remand for Further Proceedings Is Appropriate

When error exists in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16, 123 S. Ct. 353, 355, 154 L. Ed. 2d 272 (2002) (internal quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004). Remand for further proceedings is appropriate "if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); see Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000) (explaining

1  that "decision of whether to remand for further proceedings turns
2  upon the likely utility of such proceedings").

3      Remand is appropriate here to clarify the contradictory
4  testimony of the VE regarding Plaintiff's ability to perform her
5  past relevant work.

6  **VI.  CONCLUSION**

7      Accordingly, **IT IS HEREBY ORDERED** that (1) the decision of
8  the Commissioner is REVERSED; (2) Plaintiff's request for remand
9  is GRANTED; and (3) this action is REMANDED for further
10 proceedings consistent with this Memorandum Opinion.

11     **IT IS FURTHER ORDERED** that the Clerk of the Court serve
12 copies of this Order and the Judgment herein on all parties or
13 their counsel.

14

15 DATED: May 6, 2014

JEAN ROSENBLUTH
U.S. Magistrate Judge

23